**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **KIMBERLY LOGAN,** § | | |
| **ID # 39834-177,** § | | |
| Movant, § | | |
| § | | |
| v. § | No. 3:14-CV-0758-M (BH) | |
| § | (No. 3:10-CR-0143-M-(3)) | |
| **UNITED STATES OF AMERICA,** § | | |
| Respondent. § | Referred to U.S. Magistrate Judge | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the motion to vacate sentence under 28 U.S.C. § 2255 should be **DENIED** with prejudice.

**I. BACKGROUND**

Kimberly Logan (Movant), a federal prisoner, challenges her conviction and sentence in Cause No. 3:10-CR-0143-M. The respondent is the United States of America (Government).

**A.    Plea and Sentencing**

On May 26, 2010, Movant and eight others were indicted for conspiring to possess and distribute pseudoephedrine, knowing and having reasonable cause to believe that it would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 846. (*See* doc. 1.)[1] On December 7, 2010, Movant pled guilty to the single-count indictment pursuant to a plea agreement containing a waiver of appellate rights. (doc. 241.) In the supporting factual resume, Movant admitted that she and her coconspirators unlawfully bought pseudoephedrine tablets by traveling from pharmacy to pharmacy (a tactic known as "smurfing") in the Dallas-Fort Worth area and provided them to

---

[1] Unless otherwise noted, the document numbers refer to documents docketed in the underlying criminal case. Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

coconspirators who used them to make methamphetamine. (doc. 242 at 2-3.) She agreed that between January 2008 and March 2009, she single-handedly smurfed "*at least* 862 boxes of pseudoephedrine pills." (*Id.* at 3 (emphasis added).) She also acknowledged that she and her coconspirators bought more pseudoephedrine than law enforcement was able to document through the records obtained from various pharmacies during the investigation. (*Id.* at 3 n. 1.)

In preparing the Presentence Report (PSR), the probation officer considered Movant's admissions, pharmacy records, search warrant seizures, and the statements of coconspirators and cooperators. (doc. 300.) In February 2009, a cooperating source told DPS Narcotics Sergeant Mark Ball that Movant supplied approximately 60 boxes of pills per week to coconspirators. (*Id.* at ¶ 19.) A search warrant executed at Movant's house in March 2009, yielded a MoneyGram receipt of a wire transfer from a coconspirator to Movant for $1,135, several blister packs of pseudoephedrine pills in various dosages, MoneyGram receipts showing currency transfers between Movant and a coconspirator, and a notebook with pharmacy addresses and figures. While officers were at Movant's house, a coconspirator arrived with a delivery of two boxes of 30-milligram pseudoephedrine tablets, and he told officers that he had been buying about ten boxes of the drug per week for Movant over the past two years. (*Id.* at ¶ 21.) After her arrest, another coconspirator also admitted that she sold pseudoephedrine boxes to Movant for $30 per box, and that she began buying them in 2008 at Movant's direction. (*Id.*, ¶ 23.)

In August 2009, Sergeant Ball analyzed pseudoephedrine purchase logs from a sampling of pharmacies where the coconspirators purchased tablets. (*Id.*, ¶ 27.) Based on the logs from just three of the pharmacies frequented by Movant and the coconspirators under her direction, he found that:

* One bought a conservatively estimated 156 boxes containing 380.88 grams of pseudoephedrine between April 2008 and March 2009;

> \* Another bought a conservatively estimated 153 boxes containing 376.32 grams of pseudoephedrine between January 2008 and March 2009; and
>
> \* Movant bought a conservatively estimated 947 boxes containing 2,293.68 grams (or 2.29 kilograms) of pseudoephedrine between August 2007 and March 2009.

(*Id.* at ¶¶ 27-29.)  These purchases totaled 1,256 boxes containing 3,050 net grams (or 3.05 kilograms) of pseudoephedrine. (*Id.* at ¶ 31.)

The PSR found Movant accountable for 3.05 kilograms of pseudoephedrine, which placed her at a base offense level of 38, and it assessed a three-point increase for aggravating role and no reduction for accepting responsibility for a total offense level of 41. Based on a criminal history category of III, Movant's guideline range was 360 months to life, which was reduced to 240 months based on the 20-year statutory maximum. (*Id.* at ¶¶ 37-43, 83.)

Movant objected to the 3.05 kilogram calculation, claiming that each box contained different amounts of pseudoephedrine, and that she was not given information about the dosages in each box. (doc. 316 at 4.) The probation officer responded that Sergeant Ball had obtained pseudoephedrine logs for every participant in the conspiracy, noting that the drug amounts were determined by counting the dosage and number of tablets in each box. (doc. 330 at 2-3.)

Movant also objected to the denial of an acceptance-of-responsibility reduction, the increase for aggravating role, and to a two-point increase in her criminal history that had been assessed for committing the offense while under a criminal sentence. (doc. 316 at 1-4, 5.) The probation officer accepted Movant's objection to the criminal history score and reduced it to a II, but the applicable guideline range did not change. (doc. 330 at 3-4.)

At sentencing, the Court overruled each of Movant's objections and adopted the PSR, as amended. It also determined that a downward variance was appropriate to avoid sentence disparity among the coconspirators and imposed a below-guidelines sentence of 156 months in prison to

"reflect the seriousness of the offense, promote respect for the law and justly punish [Movant]." (doc. 357 at 14; doc. 340 at 2.)

On direct appeal, counsel filed an *Anders*[2] brief, which Movant opposed. After the United States Court of Appeals for the Fifth Circuit denied counsel's motion to withdraw and ordered a brief on the merits, it determined that Movant/Appellant's drug quantity challenge on appeal was foreclosed by her appellate waiver. *United States v. Logan,* 498 F. App'x 445, 446 (5th Cir. 2012). Movant did not petition the Supreme Court for a writ of certiorari.

**B. <u>Substantive Claims</u>**

In her original § 2255 motion, which was mailed on February 24, 2014, Movant alleged that (1) counsel was ineffective for failing to sufficiently research and challenge the quantity of pseudoephedrine used to compute her offense level; (2) there was an arithmetic error in the amount of pseudoephedrine attributable to her under the guidelines; and (3) the alleged drug-quantity error and an amendment to the guidelines violated her right to a lesser sentence. (No. 3:14-CV-758-M, doc. 2 at 7-9, 13.)

On June 9, 2014, Movant mailed a "supplement" to her "amended" § 2255 motion asserting additional claims that: (4) counsel was ineffective during plea negotiations for failing to negotiate a more favorable plea agreement; (5) counsel was ineffective for failing to properly investigate the drug quantity evidence; (6) her constitutional rights under the confrontation clause were violated by the Court's reliance on pharmacy logs to establish drug quantity at sentencing; and (7) counsel was ineffective on direct appeal for failing to raise relevant claims. (*Id.*, doc. 11 at 5-12.) The filing was construed as a motion for leave to amend the § 2255 motion, and it was granted. (*Id.*, doc. 13.)

---

[2] *Anders v. California*, 386 U.S. 738 (1967).

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Where a § 2255 movant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if he can first demonstrate either "cause" and actual "prejudice," or that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Frady*, 456 U.S. at 167-68). However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the [ ] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the defense. *Willis*, 273 F.3d at 597.

## III.  PROCEDURAL BAR

With regard to Movant's claims of an arithmetic error in the drug quantity calculation (ground 2), a right to a reduced sentence (ground 3), and a violation of her rights under the confrontation clause based on the use of the pharmacy logs (ground 6), the Government asserts that these grounds are procedurally barred because they were not raised on direct appeal. (No.3:14-CV-

5

758-M, doc. 9, at 9-11; doc. 15, at 6-7.)

As noted, defendants may be procedurally barred from collaterally attacking claims that were not raised in a direct appeal. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). To overcome the bar, they must show "cause" for the omission and "actual prejudice" resulting from the error. *United States v. Shaid*, 937 F.2d 228, 32 (5th Cir. 1991). Even then, any new assertion of error is limited to "issues of constitutional or jurisdictional magnitude." *Id.* The only exception is when a movant can establish a fundamental miscarriage of justice, *i.e.*, that he is actually innocent of the crime convicted. *Id.*

Here, Movant filed a direct appeal of her conviction in which her counsel argued that the Court erred in the calculation of drug quantity, and that the issue was not barred by an appellate waiver. *United States v. Logan,* No. 11-10352, (5th Cir. December 12, 2011 Appellant's Brief.) Movant did not raise any other issues on appeal. *Logan,* 498 F. App'x at 446. She has not shown any reason for her failure to raise grounds 2, 3 and 6 on appeal. Movant does not assert either cause or prejudice, and she does not establish a fundamental miscarriage of justice. Grounds 2, 3, and 6 are therefore procedurally barred from consideration in this motion under § 2255.

### IV.  WAIVER

Movant voluntarily pled guilty and waived her right to appeal or file a collateral challenge to her conviction or sentence, except that she reserved his right to bring: 1) a direct appeal of a sentence exceeding the statutory maximum punishment or an arithmetic error at sentencing; or 2) a collateral proceeding challenging the voluntariness of her plea and waiver, and claims of ineffective assistance of counsel. (doc. 242, at 4.) Generally, "an informed and voluntary waiver of post-conviction relief is effective to bar such relief." *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (per curiam), *accord United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). "A

defendant's waiver of [his or] her right to appeal is not informed if the defendant does not know the possible consequences of [the] decision." *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992). A defendant's waiver of the right to appeal requires special attention from the district court, and it is the district court's responsibility to ensure that a defendant fully understands his right to appeal and the consequences of waiving that right. *Id.*

Although the amended § 2255 motion argues that counsel was ineffective for failing to negotiate a more favorable plea agreement, Movant does not claim that her entry of a plea of guilty and waiver of appellate and collateral rights was involuntary, or that her attorney was ineffective in his representation concerning the entry of a guilty plea and the waiver provision. Because her claims in grounds 2, 3, and 6 fall outside the narrow exceptions to what she was authorized to pursue on collateral review, she has waived the right to assert these grounds.

## V. STATUTE OF LIMITATIONS

The Government asserts that the claims raised in the amended § 2255 motion are barred by the relevant statute of limitations. (No.3:14-CV-758-M, doc. 15.)

### A. **One Year Limitations Period**

"[Section] 2255 establishes a '1-year period of limitation' within which a federal prisoner may file a motion to vacate, set aside, or correct his sentence under that section." *Dodd v. United States*, 545 U.S. 353, 356 (2005). It states:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

7

>   (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>   (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

In this case, Movant's direct appeal was resolved on November 29, 2012. *Logan,* 498 F. App'x at 445. Because she did not seek further review, her judgment of conviction became final for purposes of § 2255(f)(1) upon the expiration of the 90-day period allowed to seek review, on February 27, 2013. *See* Sup. Ct. R. 13(1); *see also Clay v. United States,* 537 U.S. 522, 532 (2003). Because she mailed her initial § 2255 motion on February 24, 2014, it was timely filed within one year of the date her conviction became final.[3] (No.3:14-CV-758-M, doc. 2 at 13). Her amended § 2255 motion was mailed in June 2014, more than three months after the one year limitations period expired. Movant does not allege that government action prevented her from asserting her new claims earlier, or any newly recognized right, and she does not claim that she relies upon any facts in support of those claims that could not have been timely discovered by the exercise of due diligence. None of the other limitations start provisions--§ 2255(f)(2), (3), or (4)--apply to the new claims, so they are untimely filed absent relation back to the date of the original motion.

**B.    Relation Back**

Movant contends that her new grounds for relief relate back to the time of filing of the original § 2255 motion under Rule 15 of the Federal Rules of Civil Procedure.

---

[3]   *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

Rule 15 provides for the relation back of amendments filed after the expiration of the limitations period to the date of the original pleading where the claim asserted in the proposed amended pleading arises out of the same conduct, transaction, or occurrence. *See* Fed R. Civ. P. 15(c)(1)(A)-(C); *United States v. Saenz,* 282 F.3d 354, 356 (5th Cir. 2002).[4] Habeas claims do not automatically arise out of the same occurrence for purposes of Rule 15 merely because they arise out of the same trial and conviction. *See Mayle v. Felix,* 545 U.S. 644, 655 (2005) (holding that an amended habeas petition under 28 U.S.C. § 2254 "does not relate back (and thereby escape AEDPA's one year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those in the original pleading"); *United States v. Duffus,* 174 F.3d 333, 338 (3rd Cir. 1999) ("A prisoner should not be able to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period."); *see also Sharper v. Dretke,* No.3:01-CV-1405-P, 2004 WL 1074068, at * 4-5 (N.D. Tex. May 12, 2004), *rep. and rec. adopted,* 2004 WL 1348592 (N.D. Tex. June 14, 2004); *Hanna v. United States*, Nos.3:01-CV-2197-H, 2003 WL 203177, at *1-2 (N.D. Tex. Jan.27, 2003). Moreover, "[n]ew claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision. Rather [courts] must look to whether [the defendant's] new claim asserts 'a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'" *United States v, Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009) (quoting *Mayle,* 545 U.S. at 650).

Movant's original motion alleges that her counsel was ineffective for "fail[ing] to properly challenge, review, [and] research evidence" used to establish her guidelines calculation. (No. 3:14-

---

[4] Rule 15 applies to § 2255 proceedings, and where the issue raised by a proposed amendment to a motion under § 2255 would otherwise be time-barred, courts must consider the application of Rule 15. *See Saenz,* 282 F.3d at 356.

CV-758-M, doc. 2 at 7.) It challenges the drug quantity attributed to her and the application of a leadership-role enhancement, which are both issues related to sentencing. (*Id.* at 8-9.) The amended § 2255 motion recites additional facts and clarifies that counsel was ineffective at sentencing in failing to investigate the evidence supporting the drug quantity calculation (ground 5). (No.3:14-CV-758-M, doc. 11 at 7-9, 10-11.) This allegation does relate back to the first ground for relief in the original motion regarding counsel's performance during the sentencing phase.

The amended § 2255 motion also raises two new grounds of alleged ineffective assistance of counsel during plea negotiations and on direct appeal. (No.3:14-CV-758-M, doc. 11 at 5, 11.) Failing to negotiate a more favorable plea agreement or neglecting to raise particular arguments on appeal involve "distinct type[s] of attorney misfeasance" and are separate occurrences from the sentencing phase. *Gonzalez*, 592 F.3d at 680 (quoting *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005)). These new ineffective assistance of counsel arguments therefore do not relate back to the original motion and are barred by the statute of limitations.

The amended motion also contends that Movant's right under the confrontation clause was violated by the Court's consideration of the pharmacy logs in formulating the drug quantity. (No.3:14-CV-758-M, doc. 11 at 10.) Although Movant mentioned the pharmacy logs in her reply brief, she did not argue any confrontation clause violation in her original motion. (No.3:14-CV-758-M, doc. 10 at 6-7.) This new argument does not arise out of the "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Gonzalez*, 592 F.3d at 679. As a result, it does not relate back to her original motion and is therefore untimely.

In conclusion, with the exception of the new claim that counsel was ineffective for failing to conduct an adequate investigation of the evidence supporting the drug quantity calculation (ground 5), all grounds for relief in the amended § 2255 motion (grounds 4, 6 and 7) should be

dismissed with prejudice as barred by the statute of limitations.

## VI. DRUG QUANTITY CALCULATION (Ground 2)

Movant alleges in ground 2 that there was an arithmetic error in the amount of pseudoephedrine used to compute her offense level. In addition to being procedurally barred and waived, this "arithmetic-error" claim[5] also fails on the merits. The PSR did not make any assumptions about the amount of drugs in the boxes that Movant purchased. Sergeant Ball's quantity calculations were based on pharmacy logs that he used to track the actual dosages of pseudoephedrine that Movant, Kolb, and McCoy purchased. He then used the dosages to extrapolate the number of boxes sold. (doc. 300, ¶¶ 27-29; doc. 330, ¶ III.) This method actually produced a conservative estimate of the total drug quantity attributable to Movant, i.e., 3.05 kilograms, because Sergeant Ball only tracked the amounts purchased from three pharmacies for a limited period during the conspiracy's existence. (doc.300, ¶¶ 27-31, 37.) The pharmacy logs were wholly unrebutted by Movant and constituted reliable and precise information on drug quantity. (doc. 357 at 4.)

## VII. RIGHT TO A LESSER SENTENCE (Ground 3)

Movant alleges in ground 3 that she has a constitutional right to a reduced sentence because she is responsible for a lower drug quantity based on a co-defendant's affidavit and an amendment to the Sentencing Guidelines.[6] Even taking the affidavit's contents into consideration, the reduction

---

[5] The Fifth Circuit noted that the "challenge to the court's drug-quantity determination is not a claim involving the 'usual and ordinary meaning' of arithmetic error. While [Movant] may be challenging the court's factual findings regarding drug quantity, she is not challenging the court's arithmetic; even if the drug quantities the court relied on were inaccurate, Movant does not claim it erred in adding those quantities." *Logan*, 498 F. App'x at 446 (citation omitted).

[6] The affidavit from co-defendant Margaret McCoy, which contradicts what she allegedly told Sergeant Ball in 2009 per ¶ 23 of the PSR, states:

> I Margaret McCoy do not remember stating selling Kimberly Logan Pseudoephedrine tablets, for 30,00 dollars. abox. [sic] I did state we Kimberly Logan and myself Margaret McCoy sold them to Kirk Wayne and Debbera [sic] Sutton. My statement is truthful to my knowledge and not made under stress of fear. I did not sell Kimberly Logan any boxes but i [sic] did state at first she went to in the other room with boxes and returned with our money." (No. 3:14-CV-758-M, doc. 2, at 10.)

in drug quantity would not support any right for Movant to have been given a lower sentence. Even if the 380.88 grams purchased by McCoy were subtracted from the 3.05 kilograms for which Movant was held accountable, (*see* doc. 300, ¶ 31), and Movant was held accountable for only 2.67 kilograms of pseudoephedrine, her guideline range would have still been far above the statutorily authorized maximum sentence of 240 months. (doc. 300, ¶ 83; doc. 330.) Movant received a below-guidelines sentence of 156 months. In addition to being procedurally barred and waived, Ground 3 is also subject to denial on the merits.

### VIII. VIOLATION OF CONFRONTATION CLAUSE (Ground 6)

Although Movant's claim that her rights under the confrontation clause were violated by the Court's reliance on the pharmacy logs is procedurally barred, waived, and time-barred, it also fails on the merits. A defendant's rights under the confrontation clause do not extend to sentencing. *United States v. Beydoun*, 469 F.3d 102, 108 (5th Cir. 2006). Even if a defendant had confrontation rights at sentencing, pharmacy logs are "generally admissible absent confrontation... because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *United States v. Towns*, 718 F.3d 404, 410 (5th Cir. 2013) (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009)). Accordingly, Movant's confrontation-clause claim ground is also subject to denial on the merits.

### IX. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. art. VI. To successfully state a claim of ineffective assistance of trial or appellate counsel, a movant must generally demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S.

668, 687 (1984); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Strickland*, 466 U.S. at 696. The prongs may be addressed in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (focusing inquiry on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

**A.   Drug Quantity Calculation (Grounds 1 and 5)**

Movant alleges that counsel was ineffective for failing "to properly challenge, review, research evidence with untruths [sic] and discrepancies made by Sgt. Mark Ball, which evidence was used to computate [sic] offense level" (ground 1). (No.3:14-CV-758-M, doc. 2 at 7.) Her amended § 2255 motion describes counsel's failure to "research evidence" as a "failure to investigate" (ground 5), and argues that further investigation would have shown that the number of pseudoephedrine boxes attributed to her was exaggerated and that the total amount of pseudoephedrine was miscalculated because of variations in the number of pills and dosage strength

in each box. (*Id.*, doc. 11 at 7.)

Counsel has a duty to investigate the charges and the evidence against his client. *Strickland*, 466 U.S. at 690-91. "Counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id.* at 690. Movant does not show that counsel performed deficiently, nor does she identify any specific acts or omissions that were not the result of reasonable professional judgment. *See Id.* Contrary to her assertions, counsel did challenge the evidence supporting the offense level calculation through four objections, including an objection to the drug quantity. The PSR credited one of the objections. Although the district court overruled the remaining objections and found the drug-calculation methodology to be sound, Movant does not provide any corroboration or support for her claim that her version of the facts would have been confirmed by further investigation. She fails to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Further, even assuming counsel was deficient in challenging the drug quantity, the Court made clear that its guideline rulings did not impact Movant's sentence: "The record will reflect that this would be the sentence that the Court would impose without regard to any of the objections that were asserted on the defendant's behalf. In other words, if all the objections had been sustained[,] this would be the same sentence that the Court would impose." (doc. 357 at 19.) Movant has not shown that but for counsel's errors, "there is a reasonable probability that" the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693-94. Because she has failed to show prejudice, Grounds 1 and 5 should be denied.

**B.    Plea Agreement (Ground 4)**

Movant also alleges that counsel was ineffective for failing to negotiate a more favorable plea agreement. (No.3:14-CV-758-M, doc. 11 at 5-7.)

Movant does not allege that a better plea agreement was available to her. She makes no showing that even if the parties had reached a more favorable agreement, the Court would have accepted it and imposed a more favorable sentence. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012) (holding that, among other things, the defendant must show a reasonable probability that the prosecution would have persisted with a particular plea offer in light of intervening circumstances and the court would have accepted the terms of the proposed plea agreement). Because Movant fails to provide any details, her claim of ineffective assistance is fatally vague. *See generally United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (ruling that pro se litigants are still required to provide sufficient facts in support of their claims, and even under the rule of liberal construction, "mere conclusory allegations on critical issues are insufficient to raise a constitutional issue"); *Blackledge v. Allison*, 431 U.S. 63, 774 (1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of record are wholly incredible.") Movant's time-barred claim that counsel was ineffective during plea negotiations also fails on the merits.

C.  **Direct Appeal (Ground 7)**

Movant contends in ground 7 that "she has just become knowledgeable of relevant available claims excluded from direct appeal as she was never advised of such by appellate attorney, nor has she knowledge why neither were brought up at appeal." (No.3:14-CV-758-M, doc. 11 at 11.)

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether appellate counsel has been ineffective is also determined by using the *Strickland* standard. Under *Strickland*, a petitioner must show a reasonable probability that but for his counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

15

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462–63 (footnote and citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

Movant does not indicate what arguments her appellate counsel should have raised or how they might have changed the outcome of her appeal. As discussed, simply making "conclusory allegations" is insufficient to show ineffective assistance of counsel. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). She has not shown any "[s]olid, meritorious arguments based on directly controlling precedent" that counsel should have raised on direct appeal. *See Williamson,* 183 F.3d at 462-63. Movant must identify specific acts or omissions that were not the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Because she has failed to do so, her time-barred ground that counsel was ineffective on appeal also fails on its merits.

## X. RECOMMENDATION

The *Motion Under 28 U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* as Amended should be **DENIED** with prejudice.

**SO RECOMMENDED on this 11th day of December, 2015.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE